IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Venice Small, | Case No. 3:24 CV 7 |
|         Plaintiff, | ORDER GRANTING |
| -vs- | ATTORNEY LIEN |
| Liberty Mutual Personal Insurance Company, | JUDGE JACK ZOUHARY |
|         Defendant. | |

This is no small case. It has, over time, involved numerous lawyers, discovery disputes, motion practice, and several settlement attempts. The parties did reach an agreement on February 17, 2025. But that was not the end. Plaintiff's former legal counsel filed a lien (Doc. 46), prompting this Court to hold a Hearing on March 17, 2025. This Order should spell the end to this long-running drama.

## INTRODUCTION

This case, a fire loss brought by a homeowner against his insurer, began in 2024 with a refiled Complaint. Attorney Zilba represented Plaintiff. A previous Complaint (22-CV-2198) was filed on Plaintiff's behalf in 2022, later dismissed by Stipulation in March of 2023 (Doc. 12). After some discovery, a Motion for Summary Judgment was briefed in 2024 (Docs. 11, 16, 21). Settlement attempts took place in June of 2024. This Court ruled on Summary Judgment in July 2024, dismissing the bad-faith claim and leaving the contract claim.

Attorney Zilba withdrew as counsel in August 2024 (Doc. 24); another unsuccessful settlement conference followed. This Court attempted to secure pro bono counsel for Plaintiff; a lawyer was willing to take on the case, but he declined after talking to Plaintiff. In December 2024,

this Court handled a document discovery dispute and scheduled Plaintiff's deposition for December 2024.  The date was extended twice, first to January 2025 and then to February 2025.  Trial was set for April 2025.  The day before the scheduled deposition, parties notified this Court that a settlement was reached.  A Dismissal Order was filed on the Court docket (Doc. 45).  Shortly thereafter Attorney Zilba filed a Motion to Intervene with a Notice of Lien (Doc. 46).  Several filings have taken place since then (Docs. 48–50, 52–56).  More filings (Docs. 57–65) followed the Hearing.

## LEGAL STANDARDS

Ohio does not have a statute addressing how and when an attorney's charging lien attaches or how it can be enforced.  *Moran v. Ruan Logistics Corp.*, 652 F. Supp. 3d 921, 928 (S.D. Ohio 2023).  Instead, charging liens are recognized and enforced under common law.  *Id.*  The seminal Ohio case is *Cohen v. Goldberger*, 141 N.E. 656 (Ohio 1923).  There, the Ohio Supreme Court stated in its syllabus:

> The right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the *equity* of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that *his services and skill created the fund*.

*Id.* at 656 (emphasis added).  The "standard does not . . . preclude counsel retained earlier in the litigation from recovering upon a charging lien simply because such counsel has been discharged as of the date of the judgment, so long as counsel can demonstrate the significance his contribution has to that judgment."  *Cuyahoga Cnty. Bd. of Comm'rs v. Maloof Props., Ltd.*, 968 N.E.2d 602, 605 (Ohio Ct. App. 2012).  The decision to impose an attorney charging lien is "left to the sound discretion of the court" and is based on the "facts and circumstances of the particular case."  *Ohio Willow Wood Co. v. Alps South, LLC*, 2019 WL 2537477, at *2 (S.D. Ohio 2019).

"Importantly, an attorney cannot recover on a charging lien merely because the fund at issue would not exist but for his work." *Slater v. Ohio Dep't of Rehab. & Corr.*, 111 N.E.3d 492, 503 (Ohio Ct. App. 2018). Ohio courts have avoided applying a "but for" test because anyone remotely involved in a combined legal effort could stretch their contribution to invoke a charging lien. *Id.* Instead, Ohio courts have strictly applied the *Cohen* standard: "whether the attorney created the fund at issue with his services and skills." *Id.*

### INITIAL MATTERS

Before turning to the merits, this Court will address two side issues raised at the Hearing: Plaintiff's claims of forgery and withheld information.

### *Forgery*

The "Contingency Fee Contract" purportedly signed by Attorney Zilba and Plaintiff reads: "Clients agree that should Attorney be discharged for any reason Attorney shall have a lien on any recovery for his earned fees and costs advanced" (Doc. 46 at 7). Plaintiff claims he "does not recognize the contract" (Doc. 49 at 2). At the Hearing, Plaintiff began by making a claim of forgery (Tr. at 9).

This Court reviewed several documents from different points in this litigation to evaluate the merits of such a serious claim. This Court first reviewed Plaintiff's signature from his Affidavit that accompanied the Opposition to the Motion for Summary Judgment (Doc. 16-2 at 15). Next, this Court reviewed his signature from his Consent to Disclose and Release Form (Doc. 39-5 at 1). Then, this Court reviewed his signature from the Contingency Fee Agreement with Attorney Zilba (Doc. 52 at 4). Finally, this Court reviewed his signature from the Settlement Agreement with Liberty Mutual (Doc. 48-1 at 4). Each of these signatures are virtually identical. The line quality, slant, spacing, and letter formation are consistent over the several year period.

3

On cross-examination, Plaintiff asserted the claimed forgeries of his signature were located elsewhere -- in the "settlement demands" and the "mediation demands" (Tr. at 67). This was later refined to be the "settlement mediation" -- "the one that was made to [M]agistrate [C]lay" (Tr. at 68). Plaintiff subsequently provided this Court with a copy of the "Mediation Statement" (Doc. 57 at 10–14). His signature appears nowhere on that document -- no forgery.

Further, Plaintiff complained he signed a different contract than the one presented by Attorney Zilba (Tr. at 69). Plaintiff claimed he had never "seen the contract with a lien" (*id.* at 9). Plaintiff subsequently presented to this Court two screenshots labeled "Contract" (Doc. 57 at 22–23). These screenshots are unhelpful at best. One screenshot is half a page of the Contingency Fee Contract; the other is a completely blank page with a signature line. Clearly, this submission is not a complete representation of the executed Contract. It is not well-received by this Court. This claim of forgery too is wholly without merit.

### *Withheld Settlement Offer*

Plaintiff also alleged that a settlement offer in the earlier stages of litigation was withheld from him (Tr. at 9). The referenced offer was $15,000 made by Liberty Mutual ahead of the first August mediation (*id.* at 76). According to records and testimony, that offer was sent on or around July 16, 2024 (*id.* at 81; *see* Doc. 53 at 8); and then communicated to Plaintiff about two weeks later on July 29 via email (Doc. 56).

Plaintiff's initial written demand was $333,000 (Tr. at 76). At mediation, his first demand was $300,000; Liberty's counter was $25,000 (*id.* at 77). Parties pivoted to a bracket exchange -- Liberty at $35,000–$75,000 (*id.*); Plaintiff at $200,000–$290,000 (*id.*).

Plaintiff presented this Court with various screenshots of the Ohio Rules of Professional Conduct, specifically Rule 1.4 (Doc. 57 at 1–6). That Rule is titled "Communication." The Rule requires attorneys to reasonably inform their clients. The second Comment to the Rule states:

> For example, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy . . . must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer.

Attorney Zilba claims Plaintiff made it explicitly clear that he would not accept less than a six-figure settlement. Plaintiff does not dispute this. Liberty Mutual never made a six figure offer at any time, either before or during this case. Any slight delay in communicating an offer back in July is of no consequence, especially since the amount was knowingly unacceptable to Plaintiff.

## ANALYSIS

### *Imposing the Lien*

Ohio courts have often considered the following factors when deciding whether to impose an attorney lien:

> (1) the right of the client to be heard on the merits; (2) the right of an attorney to invoke the equitable jurisdiction of the courts to protect his fee for services rendered; (3) the elimination of unnecessary and duplicative litigation; (4) the opportunity for the client to obtain counsel to litigate the claim for attorney fees; (5) the propriety of an order as opposed to a judgment; (6) a forum for the presentation of witnesses, if necessary; and (7) the equitable nature of the proceeding.

*Moran*, 652 F. Supp. 3d at 928.

Plaintiff was heard on the merits at the recent Hearing. This Court possesses the requisite equitable jurisdiction having presided twice over this case. The grant of a lien will avoid duplicative litigation regarding Attorney Zilba's claim for unpaid costs and fees.

### *Amount -- Totality of the Circumstances*

"Ohio case law does not support [the] assertion that the lodestar method should be used to determine the amount of an attorney charging lien." *Ohio Willow*, 2019 WL 2537477, at *5. An attorney charging lien is an equitable enforcement akin to quantum meruit. *Moran*, 652 F. Supp. 3d at 928.

> A trial court called upon to determine the reasonable value of a discharged contingent-fee attorney's services in *quantum meruit* should consider the totality of the circumstances involved in the situation. The number of hours worked by the attorney before the discharge is only one factor to be considered. Additional relevant considerations include the recovery sought, the skill demanded, the results obtained, and the attorney-client relationship itself. . . . Because the factors to be considered are based on the equities of the situation, those factors, as well as the ultimate amount of *quantum meruit* recovery by a discharged attorney, are matters to be resolved by the trial court within the exercise of its discretion.

*Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 629 N.E.2d 431, 436–37 (Ohio 1994).

This Court has considered the totality of the circumstances, including how many hours Attorney Zilba worked before the discharge (Docs. 53, 55), the recovery sought, skills demanded of the attorney, the actual result obtained, and the attorney-client relationship itself.

The contract of representation (both sides offered the same document) includes a clause stating, "Attorney's fee shall be a sum equal to . . . 40% of any amount recovered after suit and/or arbitration proceedings have been filed" (Docs. 52 at 3; 57 at 23). This Court notes the short time frame between Attorney Zilba's withdrawal from this case and the ultimate settlement. This Court also recognizes the hard work Attorney Zilba put into this case.

Defense counsel testified at the Hearing. He described the case as "very document intensive" with a "significant learning curve for Mr. Zilba, given the number of prior counsel . . . [6 or 7] involved" (Tr. at 82). In addition, there was a "substantial briefing effort on summary judgment" (*id.* at 83). Surviving summary judgment "put settlement value on the case" (*id.* at 84). And the

"settlement value of the case stayed roughly the same . . . until the time that significant costs were going to be incurred . . . deposing the [P]laintiff, taking the other depositions and preparing the case for trial" (*id.*). In other words, Attorney Zilba did much work to increase the settlement value, and Plaintiff made the decision, finally, to avoid his own deposition, and trial, by accepting an offer that he could have received long before with Attorney Zilba.

This Court had the opportunity to review the docket, deal directly with Plaintiff on status calls in his pro se capacity, and fully agrees with defense counsel that the efforts of Attorney Zilba contributed to the settlement value of this case. This was not the situation where Plaintiff's counsel called all the shots. Rather, this Court knows first-hand that Plaintiff played an active, and not always truthful, role in pursing his claim. His choice to run through numerous lawyers and insist over time for a large payout, ignoring the potential weaknesses in his case, contributed to the lengthy marathon about which he complains so loudly.

The records and emails produced by Attorney Zilba (e.g., Docs. 52–56, 58–64) fully justify a lien. This Court finds the amount of $29,000 (roughly 35% of the settlement) appropriately reflects the totality of the circumstances. It is both fair and equitable. Liberty Mutual is directed to promptly issue the separate payments as reflected in this Order.

A final note. Plaintiff's attempt to control the entire settlement amount did not go unnoticed by this Court (Tr. at 88–92). The delays in reaching this final resolution were not the fault of the legal system.

IT IS SO ORDERED.

                                                 s/ *Jack Zouhary*
                                                 JACK ZOUHARY
                                                 U. S. DISTRICT JUDGE

                                                 March 26, 2025